### No. 12,882.

CHAMBERS, HOLTON & WINN VS. JOHN A. HUBBARD & CO., HIBERNIA NATIONAL BANK AND JOHN HOLMES & CO.

### SYLLABUS.

Act 156 of 1882 did not repeal Act 72 of 1876.

A factor who holds a warehouse receipt may pledge the goods, covered by the receipt, to the extent that he is a creditor of the principal.

To the extent that the factor is a creditor with a warehouse receipt securing his claim, the debtor of the factor is without interest to question the form of the warehouse receipt; the factor, having been under operation of law, subrogated to the right of his principal to the extent before stated.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Theard, J.*

---

*Edwin T. Merrick* for Plaintiffs, Appellees.

*Samuel L. Gilmore* for Hibernia National Bank, Defendant, Appellant.

Argued and submitted March 9, 1899.
Opinion handed down March 20, 1899.
Rehearing refused, with reasons, April 17, 1899.

On application for rehearing by WATKINS, J.

The opinion of the court was delivered by

BREAUX, J. The defendant bank prosecutes this appeal to have the judgment appealed from amended, so as to recognize the pledges claimed by the Hibernia National Bank to the amount of $3,385.14.

Appellant, at the outset, disavows any intention to bring up anew questions of the right of the Hibernia National Bank to execute its pledges of the 18th and 19th of December, 1893, in so far as these questions have been disposed of by the decision of the Supreme Court in the case of Holton and Winn vs. John A. Hubbard *et al.*, 49th Ann., 715.

We take it that the following, is the proposition here involved, and that it presents the question before us for decision:

The bank is entitled to enforce its pledges against the individual interest of the debtor of its pledgor, to the extent that the debtor is indebted to its pledgor.

The record discloses that the firm of Chambers, Holton & Winn was a planting partnership, composed of W. Frank Chambers and the planting partnership of Holton and Winn. The interest of Chambers in this partnership was two-thirds, and Holton and Winn, one-third; that they consigned one thousand four hundred and ninety-five sacks of rough rice to John A. Hubbard, a commission merchant, of New Orleans (subsequently the house became known as John A. Hubbard & Co.; the company being Harris Gagné, who was, before that time, a partner, though his name was not made mention of as such). The sacks were stored in a warehouse, and warehouse receipts issued for this rice; and afterward pledged by John A. Hubbard to the Hibernia National Bank to secure a loan made by the bank to the pledgor.

About a month after this pledge had been made, J. A. Hubbard & Co., and the individual members of the firm, made a *cessio bonorum*. The syndic of the house was made a party to this suit.

Chambers, Holton & Winn brought suit for the sacks, took out a writ of sequestration, and sequestered both the sacks and the warehouse receipts (the latter were in the possession of Hubbard's pledgees, and the sacks of rice in the Rio Warehouse).

It is well to bear in mind that the warehouse receipts issued by the owner of the Rio Warehouse were pledged by John A. Hubbard to the appellant bank on the 16th day of December, 1893.

Chambers was not a party to the suit cited *supra*.

H. Gagné, partner of John A. Hubbard & Co., and book-keeper, testified that on the account of Wm. F. Chambers, with his firm, it appears that Chambers was indebted to John A. Hubbard, on the 29th day of January, 1893, in the sum of $1,686.81, and on that day the account of Chambers was balanced by charging it to the account of Chambers, Holton & Winn, so that the account of W. F. Chambers was actually released on the face of the papers by adding the amount that he owed to Hubbard.

The plantation on which the rice was raised was owned by Holton and Winn. Chambers received two-thirds as his share, for the reason that he cultivated the land, thrashed the rice, stacked it and delivered it at the landing, giving one-third and taking two-thirds for his work. He furnished all the money to raise the rice.

Holton, as a witness, swears that he was in New Orleans at the time the accounts were balanced, as before stated; that he knew that the rice had been pledged, and at the time it appeared that Chambers was indebted to Hubbard.

Also that there was no connection whatever between the affairs of Holton and Winn and those of Chambers, Holton and Winn.

He further testifies that Viterbo was Hubbard's agent.

Hubbard's book-keeper testifies as follows:

"Q. Will you look at page 272 of the ledger, and state what account appears on that page?

"A. Wm. F. Chambers.

"Q. What does that amount show?

"A. Shows, under date of January 4th, a debit of $1,386.81, on January 2d, a debit of $300.

"Q. Do you know what $1,386.81 was for that debit entry?

"A. A sight draft in favor of Leon Viterbo & Bro.

"Q. Drawn by whom?

"A. W. F. Chambers."

Appellant also claims an amount of $1,800 growing out of business with still 'another firm, it appears, of Hubbard and Viterbo, and also claims commission and warehouse charges it claims to have paid. Each of these claims has received attention, and will be disposed of in our opinion and by our decree.

The judgment appealed from recognized the joint ownership of Chambers, Holton & Winn in the proportion' of an undivided two-thirds to Chambers, and one undivided third to the partnership of Holton and Winn, and, in that proportion, condemned the bank to pay the proceeds to plaintiffs.

. From the judgment the Hibernia National Bank prosecutes this appeal.

In our judgment, if one is personally indebted to the pledgor, the pledgor has the right to enforce its pledge to the amount that the debtor, to the pledgor, is indebted.

In the case before decided, 49th Ann., 733, the court found that Holton and Winn were not indebted to Hubbard at all, but that, on the contrary, Hubbard was indebted to them.

Here, there is clear and direct evidence showing that Chambers was indebted to Hubbard.

Had Hubbard not failed in business, he could have deducted from Chamber's share of the crop the sum of the latter's indebtedness. Chambers, as to his indebtedness, is without right as against the pledges made. Hubbard was entitled to pledge his claim to whosoever he pleased.

After deducting the proportion to which Chambers, Holton and Winn had a right, the remainder, in our view, should be credited to the claim of the pledgees of Hubbard.

We are brought by the foregoing conclusion to the next claim of appellant to the sum of $1,800, growing out of an asserted indebtedness by Holton and Winn to Hubbard, .arising from the business between Hubbard and Viterbo.

We· have, in our prior 'decision (49th Ann.) passed upon that question to the extent of holding that Holton and Winn were not indebted to Hubbard. That is an end of the question. The well known Latin maxim applies, translated. with some· freedom: "There must be an end to disputes." We have none the less given some attention to this claim, and do not find, as an original question, that it stood on a solid

basis. Be this as it may, the matter was disposed of heretofore, and is no longer reviewable.

The claim is made by appellant for commissions and warehouse charges, it claims to have paid. This claim is not sustained, as we think, by the facts. The amounts were deducted from the sum for which the judgment was rendered, and can not again be charged to plaintiff.

Therefore it is ordered, adjudged and decreed that the judgment appealed from be amended by deducting $1,434.05 from the amount of the judgment, leaving $4,436.63, with legal interest from the date of the judgment appealed from, to be paid by appellant (bank) to plaintiffs.

It is ordered, adjudged and decreed, that there be judgment in favor of the appellant bank for the amount of $1,434.05, to be paid out of the proceeds of the rice crop, and that, to that amount, the pledge by Hubbard to the appellant bank is recognized and is to be enforced.

In other respects the judgment appealed from is affirmed.

Appellee to pay the costs of appeal.        ·

### On Application for Rehearing.

WATKINS, J. The prayer of plaintiffs' petition is for judgment decreeing certain warehouse receipts illegal and of no effect as to them; and also, that a certain pledge to the Hibernia National Bank be, likewise, declared illegal, and without effect as to them.

Also, and in any event, that they be recognized as the owners of the rice in the proportion of two-thirds to Chambers, and one-half to Holton and Winn.

The District Court gave judgment in favor of plaintiffs in those proportions as joint owners of one thousand four hundred and ninety-five sacks of rice, free of the claim of the bank as pledgee, and further recognizing them entitled to the net proceeds of said rice in the hands of the bank, and fixed the amount which the bank should pay, at the sum of $5,872.68.

The bank appealed for the purpose of having its pledge recognized to the extent of $3,385.14.

Plaintiffs consigned to John A. Hubbard, a commission merchant, one thousand four hundred and ninety-five sacks of rough rice.

The house afterwards became John A. Hubbard & Co.

The sacks were stored in a warehouse, and warehouse receipts were issued therefor, and John A. Hubbard afterward pledged them to the bank.

Soon afterwards John A. Hubbard & Co. failed in business, and availed themselves of the insolvent laws. The plaintiffs, subsequently, sought to recover same by sequestration.

Our judgment holds that the bank, as pledgee, is entitled to enforce its pledge against the rice to the extent that Chambers is indebted to its pledgor, Hubbard—the residue to go to the plaintiffs.

It recognized the right of the bank to the amount of $1,434.05, and gave plaintiffs judgment for $4,436.63.

The application for a rehearing is made on the part of the plaintiff, and is chiefly devoted to what is termed "an eror in calculation," but a brief has been filed on the part of the bank in which a review of all the facts is given.

A re-examination of the case has satisfied us that the opinion does justice to all.

Rehearing refused.

MONROE J., takes no part, not having been a member of the court when the case was submitted.